### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

**ALINE AND JAMES RENTROP**                                              **PLAINTIFFS**

**V.**                                                **CIVIL ACTION NO.1:07CV384 LTS-RHW**

**NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, ET AL.**        **DEFENDANTS**

**Consolidated with**

**ALINE AND JAMES RENTROP**                                              **PLAINTIFFS**

**V.**                                                **CIVIL ACTION NO. 1:07CV 919 LTS-RHW**

**TRUSTMARK NATIONAL BANK, ET AL.**                          **DEFENDANTS**

### <u>MEMORANDUM OPINION</u>

The Court has before it Defendant Trustmark National Bank's (Trustmark) motion [51] for judgment on the pleadings.  In support of this motion Trustmark has submitted material outside the pleadings (Exhibit 3 to Trustmark's Motion for Judgment on the Pleadings). I will therefore consider this motion as one for summary judgment under F.R.Civ.P. 56, and I will take all of the pleadings into consideration including the third-party complaint Trustmark filed against Nationwide Mutual Insurance Company, Nationwide Property and Casualty Insurance Company, and Nationwide Mutual Fire Insurance Company (collectively referred to as Nationwide) and John J. Fletcher.  For the reasons set out below, Trustmark's motion will be denied.

During December, 2003, Plaintiffs purchased a residence situated at 6217 Martin Bayou Drive, Biloxi, Mississippi.  The purchase was financed through Capital Trust Mortgage, LLC (Capital Trust).  Capital Trust determined that this property was in a special hazard flood zone, and, on December 30, 2003, Capital Trust gave the plaintiffs notice of this determination and of the requirement that they obtain flood insurance. The plaintiffs acknowledged receipt of the notice and agreed to furnish a copy of their application for flood insurance and a receipt for payment of the flood insurance premium.  Plaintiffs also agreed to maintain flood insurance for the life of the loan. (Exhibit 3 to Trustmark's motion for Judgment on the Pleadings)

At the loan closing, the plaintiffs furnished proof of a Nationwide homeowners policy (Nationwide policy number 63HO212-738).  Plaintiffs also furnished Capital Trust with their application to Nationwide for flood insurance coverage under the National Flood Insurance Program (NFIP) and the initial premium necessary to secure this flood insurance coverage for one year.  The application and initial premium were transmitted and tendered to Nationwide.  (Trustmark Third-Party Complaint Paragraphs 5–9).

The premiums for this flood insurance were to be paid from the escrow account Capital Trust established for this loan. The mortgage loan was later transferred to Trustmark, and Trustmark assumed the obligation to keep flood insurance in force on this property and to remit the amount of the premiums due to Nationwide from the plaintiffs' escrow account. (Trustmark Third Party Complaint, Paragraph 10).

Third-party Defendant Nationwide issued both a standard flood insurance policy (SFIP) under the National Flood Insurance Act (NFIA) and a homeowners policy for this property at or near the time of the December 2003, loan closing. The SFIP was supposed to be renewed annually, but at the time of Hurricane Katrina (August 29, 2005) the SFIP had lapsed. The reasons for this lapse, whether Trustmark failed to pay the premium or Nationwide failed to credit the premium properly, are at the center of this lawsuit. There are many genuine issues of material fact that must be resolved in order to determine who is responsible for the lapse of the Nationwide SFIP prior to Hurricane Katrina.

The forces generated by the storm extensively damaged Plaintiffs' property, and it was not until after the storm that Plaintiffs learned their Nationwide flood insurance policy was not in force. Plaintiffs brought this action against Trustmark in the Circuit Court of Jackson County, Mississippi, alleging that Trustmark was negligent and that Trustmark breached its contractual obligation to pay the premiums for this flood insurance coverage from the plaintiffs' escrow account. Plaintiffs brought a separate action against Nationwide, and, after removal of the action against Trustmark, the two cases were consolidated in this Court. The plaintiffs' state court complaint alleges that Trustmark deducted the flood insurance payments from the plaintiffs' escrow account but did not pay the flood insurance premiums. (Original Complaint Paragraph 8) Plaintiffs also allege that Trustmark represented to them that the flood insurance premium had been timely paid. Plaintiffs contend that this was a misrepresentation on which they reasonably relied to their detriment. (Original Complaint Paragraphs 14–18)

When Trustmark answered the original state court complaint and filed its third-party complaint against Nationwide, Trustmark alleged that the premiums for the flood insurance policy were paid from the plaintiffs' escrow account and misapplied by Nationwide:

> 17. *Upon information and belief, Nationwide caused the funds which Trustmark remitted via the December 30, 2004 check to Nationwide as payment for the annual premium on Plaintiffs' flood policy to be applied to the wrong policy and not to Plaintiffs' flood insurance policy.* (Third Party Complaint Paragraph 17)

Thus Trustmark asserted that Nationwide was negligent in administering the flood insurance policy that was put into effect at the time of the loan closing.

In support of the motion now before the Court, Trustmark asserts that plaintiffs' have no valid grounds to pursue a claim against Trustmark under the NFIA and the regulations governing the NFIP.  Trustmark has cited a number of cases that stand for the proposition that an improper survey or determination whether mortgaged property is inside or outside the special flood hazard zone does not give rise to a cause of action by the property owner against the surveyor or the lender.  These cases include: *Audler v. CBC Innovis, Inc.*, 519 F.3d 239 (5th Cir.2008); *Till v. Unifirst Federal Sav. and Loan Ass'n*, 653 F.2d 152 (5th Cir.1981); *Ellis v. Countrywide Home Loans, Inc.*, 541 F. Supp. 2d 833 (S.D.Miss.2008); *Lusins v. First American Real Estate Solutions of Texas, L.P.*, 2007 WL 1745625 (S.D.Miss.); *Kearney v. Countrywide Home Loans, Inc.*, 2007 WL 4302963 (S.D.Miss.); *Ford v. First American Flood Data Services, Inc.*, 2006 WL 2921432 (M.D.N.C.)*; Callahan v. Countrywide Home Loans,* Inc., 2006 WL 2993178 (N.D.Fla.).  These cases make it clear that the NFIA did not create a private right of action for failure to make an accurate flood zone assessment and that a homeowner cannot use the NFIA as the basis for a state law negligence claim for this type of error.

A regulated lender does not have an affirmative duty under the NFIA to notify a mortgagor of a change in status when flood zone maps are redrawn.  *Wentwood Woodside I, LP v. GMAC Commercial Mortg.*, 419 F.3d 310.  Nor does a regulated lender have a duty to the mortgagor under the NFIA to purchase an adequate amount of flood insurance or to purchase forced placed insurance in the event the mortgagor fails to provide proof of coverage. *Nicholson v. Countrywide Home Loans*, 2008 WL 731032 (N.D.Ohio).

But this case does not involve an allegedly erroneous flood zone determination nor a change in the boundaries of a flood zone nor the failure to obtain flood insurance coverage.  This case deals with the failure to timely pay the premiums necessary to keep a flood insurance policy in force.  I do not believe the holdings in the cases I have listed are relevant to the issue whether Trustmark was contractually obligated to make flood insurance premium payments, and this is the essence of the plaintiffs' contract claim against Trustmark.  In my opinion, Trustmark's duty to make these payments, if any, does not arise under the NFIA.  This duty would arise, if at all, from the terms of the contracts that govern the business relationship between Trustmark and the plaintiffs or from the course of dealings concerning these premium payments.  Thus, even if there is no explicit contractual obligation for Trustmark to make the premium payments, if Trustmark undertook to make the payments from an escrow account established for the plaintiffs, and if the plaintiffs reasonably relied on Trustmark to follow this established practice, their reliance may give rise to a cause of action under Mississippi tort law.

Of course at this stage of these proceedings there is no way to ascertain any of the facts necessary to determine the merits of the plaintiffs' claims or of Trustmark's third-party claims and defenses.  With respect to the merits of Trustmark's motion for judgment on the pleadings, treated as a motion for summary judgment, Trustmark has the burden of proving that there is no genuine issue of material fact and that it is entitled

to judgment as a matter of law.  I cannot say that Trustmark has carried its burden on the basis of the record before me.

I cannot accept Trustmark's argument that the plaintiffs have no legal basis on which to proceed against it.  While I agree with Trustmark that the plaintiffs do not have a private right of action under the NFIA, I do not agree with its assertion that this ends the inquiry into Trustmark's potential liability.  While the NFIA does not provide a private right of action, neither does it provide a shield from liability for breach of a duty that arises under state law.

In *Till v. Unifirst Federal Sav. and Loan Ass'n*, 653 F.2d 152 (5th Cir. 1981), plaintiffs asserted a claim under the NFIA for a regulated lender's failure to notify them that the home they purchased was in flood hazard area.  The Court found that the plaintiffs had no right of action under the NFIA, but the Court expressly left open the question whether, on the facts of that case, a state law claim for negligence survived. The case was remanded, and there is no reported case to reveal the ultimate outcome after remand.

In the context of the borrower-lender relationship, Mississippi recognizes a right of action under state law for breach of a contractual obligation to obtain credit life insurance, *Parnell v. First Sav. And Loan Ass'n of Leakesville*, 336 So.2d 764 (Miss.1976).  I see no reason to believe that Mississippi would not recognize an analogous right of action for breach of a contractual obligation to obtain and maintain flood insurance coverage.

Plaintiffs do not contest the holding of the cases Trustmark has cited, but the plaintiffs assert that these cases are not on point.  Plaintiffs assert that their claims against Trustmark arise under state law, and I agree.  Plaintiffs allege that Trustmark breached its contractual obligation to keep the Nationwide flood insurance policy in force by the timely payment of premiums from the plaintiffs' escrow account.  Plaintiffs have alleged that this was originally the contractual obligation Capital Trust undertook at the time of the loan closing, and Plaintiffs assert that it became the contractual obligation of Trustmark when the loan was assigned to it.  Plaintiffs also allege state law causes of action against Trustmark for negligence and for negligent misrepresentation.

The validity of the plaintiffs' contract theory of recovery hinges on the terms of the closing documents for the Capital loan, the terms of the assignment, the terms of the flood policy, and the terms of any other documents that may give rise to a contractual obligation on the part of Trustmark to pay the annual flood insurance premiums and keep the flood policy covering the plaintiffs' property in force.  See: *Whitfield v. Countrywide Home Loans*, Inc., 2007  WL 1200829 (E.D.La.), aff'd 252 Fed.Appx. 654, 2007 WL 3151889 (5th Cir.2007), following remand 2008 WL 145101 (E.D.La).  The validity of the plaintiffs' theories of recovery based on their allegations of negligence and misrepresentation will depend on the course of dealings between the parties as well as the terms of the flood policy and the loan documents. *Cosse v.*

*Washington Mutual Bank*, 2007 WL 4224236 (E.D.La.).  None of these documents is before the Court at this point.

In light of the allegations in Trustmark's third-party complaint, it appears to me that Trustmark agrees that it undertook a contractual duty to pay the premiums on this flood insurance policy and that Trustmark claims to have done just that.  Indeed, the basis for Trustmark's third-party complaint is its allegation that Nationwide mishandled or misapplied the premium Trustmark sent for the flood policy covering the plaintiffs' property.

I assumed jurisdiction of this case based upon my view that there are issues raised by Trustmark's third party complaint which are governed by the NFIA, i.e. issues concerning the proper administration of the SFIP that was put into effect at the loan closing.  These issues coexist with the state law claims framed by the plaintiffs' original complaint against Trustmark.  In my view the plaintiffs do not rely on the NFIA to support their claims of negligence, misrepresentation, and breach of contract.  As I understand the present posture of this case, Trustmark asserts that it timely paid the premium for the Nationwide flood insurance policy while Nationwide asserts that this premium was not paid. There are obviously genuine issues of material fact that remain to be resolved.

I believe that the conflicting contentions on material issues of fact, i.e. whether Trustmark timely paid the premium for the Nationwide flood policy as it agreed to do; whether Nationwide misapplied or otherwise mishandled the premium; whether any of the communications among Trustmark, the plaintiffs, Nationwide, and Fletcher caused or contributed to cause the plaintiffs' losses; and whether the plaintiffs can establish the requisite duties and breaches of those duties necessary to support a recovery, preclude summary judgment in favor of Trustmark.  While the plaintiffs do not have a cause of action against Trustmark under the NFIA, they have alleged viable theories of recovery under state law.  Accordingly, I will deny Trustmark's motion.

An appropriate order will be entered.

**DECIDED** this 12th day of June, 2008.

 s/ L. T. Senter, Jr. 
L. T. SENTER, JR.
SENIOR JUDGE